**PURDY MOBILE HOMES, INC.,**
**Plaintiff-Appellant,**

v.

**CHAMPION HOME BUILDERS CO., and**
**Tamarack Homes,**
**Defendants-Appellees.**

No. 76–1999.

United States Court of Appeals,
Ninth Circuit.

April 16, 1979.

---

R. G. Schimanski, Schimanski & Leeds, Spokane, Wash., for plaintiff-appellant.

Fred L. Woodworth, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendants-appellees.

Before CARTER and HUG, Circuit Judges, and HAUK *, District Judge.

HUG, Circuit Judge:

Purdy Mobile Homes, Inc. ("Purdy") brought this action against Champion Home Builders Co. ("Champion") and its subsidi-

ary, alleging violations of state and federal law. The district court granted summary judgment for Champion on the federal claims and entered a final judgment on those claims pursuant to Fed.R.Civ.P. 54(b). Purdy contests both the merits of the summary judgment and the propriety of the immediate entry of final judgment on fewer than all of Purdy's claims. We affirm.

### Proceedings Below

Purdy is a Washington corporation engaged in the business of selling mobile homes at retail. Champion is a manufacturer and distributor of mobile homes, with corporate headquarters in Michigan. Purdy alleged in its complaint that it had entered into an oral agreement with Champion under the brand name "Tamarack". The alleged agreement grants Purdy the exclusive right to resell the Tamarack mobile homes within a prescribed area surrounding Spokane, Washington. Purdy further alleged that during the life of the agreement Champion marketed two lines of mobile homes, the "Titan" and the "Concord", which were nearly identical to the Tamarack brand, and which were sold to other franchisees within Purdy's exclusive territory, but were not sold to Purdy. Finally, the complaint states that Champion improperly terminated its franchise agreement with Purdy.

Purdy alleged in the district court that Champion's actions constituted a breach of contract under state common law and a violation of various Washington statutes. In addition, Purdy alleged violations of three federal statutes: the Automobile Dealer Suits Against Manufacturers Act, 15 U.S.C. § 1221, et seq.; § 2 of the Sherman Act, 15 U.S.C. § 2; and § 2(e) of the Robinson-Patman Act, 15 U.S.C. § 13(e). On Champion's motion, the district court found that Purdy had failed to state a claim under any of the federal statutes. Because matters outside the pleadings had been presented to the court on Champion's motion, the

---

* The Honorable A. Andrew Hauk, United States District Judge for the Central District of California, sitting by designation.

court treated the motion as one for summary judgment under Fed.R.Civ.P. 56 and granted partial summary judgment for Champion. The district court then granted Champion's. motion for entry of a final judgment with respect to the federal claims pursuant to Fed.R.Civ.P. 54(b).

Purdy does not contest the summary judgment on the claims based on the Automobile Dealer Suits Against Manufacturers Act and the Sherman Act; however, Purdy contends that it has stated a valid claim under the Robinson-Patman Act. Additionally, Purdy asserts that the district court improperly entered final judgment with respect to the federal claims and that this court therefore lacks appellate jurisdiction. We first discuss the question of appellate jurisdiction and then review the merits of Purdy's federal claim.

*Entry of Final Judgment*

■ Rule 54(b) provides in part:

When more than one claim for relief is presented in an action, . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The portion of the Rule quoted above applies only to an action in which multiple claims are presented and in which one or more but fewer than all of the claims have been finally decided. *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 435, 76 S.Ct. 895, 100 L.Ed. 1297 (1956).

There is no question that the federal claims against Champion were finally decided, nor that the district court expressly directed the entry of final judgment on those claims. Purdy challenges the court's findings that multiple claims were presented in the action and that there was no just reason for delay in the entry of final judgment.

■ In *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695 (9th Cir. 1961), we set forth the standard to be applied in determining whether multiple claims are presented in an action:

> The word "claim" in Rule 54(b) refers to a set of facts giving rise to legal rights in the claimant, not to legal theories of recovery based on those facts.

*Id.* at 697. Purdy argues that it has presented a single claim for breach of contract and that its allegations of violations of the state and federal statutes present only alternative theories of recovery based on the same facts giving rise to the contract claim. We disagree. Purdy cannot successfully attack the court's finding of multiple claims merely by showing that some facts are common to all of its "theories of recovery". *See Gas-A-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1104–1105 (10th Cir. 1973). Purdy's contract claim requires proof of different facts than does its claim based on the Robinson-Patman Act. The latter claim requires proof of discriminatory treatment by Champion of different purchasers, an element not necessary to the proof of a breach of the franchise agreement. The facts giving rise to a showing that Champion violated the exclusive sales arrangement or unlawfully terminated the franchise agreement would be insufficient by themselves to prove a violation of the Robinson-Patman Act. The district court correctly found that Purdy's action presented multiple claims.

■■ Whether there is just reason for delay in the entry of judgment is a matter left to the discretion of the district court. *Sears, Roebuck & Co.*, 351 U.S. at 437, 76 S.Ct. 895; *Atterbury v. Carpenter*, 310 F.2d 126 (9th Cir. 1962). Purdy complains that the entry of final judgment on the federal claims necessitates an immediate appeal from that judgment, delaying trial to the detriment of the parties. However, the district court recognized that its determination that no claim was stated under the Robinson-Patman Act was based on an interpretation of that Act on which there is some disagreement among the courts. The district court noted that if review of the federal claims were delayed until after trial on the state claims, reversal on the federal

claims likely would require a second trial, consuming valuable judicial resources. In light of the factors carefully considered by the district court, we find no abuse of discretion in the court's determination that there was no just reason for delay in entry of the judgment.

The district court properly entered final judgment pursuant to Rule 54(b). Therefore, we have jurisdiction under 28 U.S.C. § 1291 to review the merits of the judgment.

### Robinson-Patman Act

Purdy asserts that Champion engaged in "multiple branding" by placing different brand names on three nearly identical lines of mobile homes. Purdy has never alleged that the different brand names themselves or other advertising associated with the different brands amounts to disproportionate promotional services connected with the resale of a single product. Rather, Purdy argues that Champion's refusal to sell to Purdy the Titan and Concord brands while selling those brands to other franchisees constitutes "delivery discrimination" in violation of § 2(e) of the Robinson-Patman Act, 15 U.S.C. § 13(e).

> Section 2(e) of the Act provides in part:
> It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by . . . furnishing . . . any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.

The purpose of § 2(e) and its companion section 2(d)[1] is to strengthen the prohibition against unfair price discrimination by prohibiting price discrimination disguised in the form of advertising or promotional services provided to purchasers on a discriminatory basis. *See FTC v. Fred Meyer, Inc.*, 390 U.S. 341, 349–52, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968); *P. Lorillard Co. v. FTC*, 267 F.2d 439, 443 (3d Cir.), *cert. denied*, 361 U.S. 923, 80 S.Ct. 293, 4 L.Ed.2d 240 (1959); *Cecil Corley Motor Co., Inc. v. General Motors Corp.*, 380 F.Supp. 819, 848–50 (M.D.Tenn.1974). The prohibitions of § 2(e) apply only to services or facilities connected with the resale of the product by the purchaser. *Kirby v. P. R. Mallory & Co., Inc.*, 489 F.2d 904, 910 (7th Cir. 1973), *cert. denied*, 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974); *Cecil Corley*, 380 F.Supp. at 851–52; *see Glowacki v. Borden, Inc.*, 420 F.Supp. 348, 358–59 (N.D.Ill.1976).

The question before us is whether Champion's refusal to sell the Titan and Concord lines of mobile homes to Purdy constitutes discrimination in the furnishing of services or facilities connected with the resale of the mobile homes. We hold that it does not.

Purdy relies upon the decision of the Seventh Circuit in *Centex-Winston Corp. v. Edward Hines Lumber Co.*, 447 F.2d 585 (7th Cir. 1971), *cert. denied*, 405 U.S. 921, 92 S.Ct. 956, 30 L.Ed.2d 791 (1972). In *Centex-Winston*, the court held that a supplier engaged in discriminatory practices in violation of § 2(e) of the Robinson-Patman Act when it delivered a product in a consistently late fashion to one purchaser while making timely deliveries to other purchasers. The court concluded that delivery of a product is a "service or facility" within the meaning of § 2(e) because timely deliveries

1. Section 2(e) applies to the furnishing of services and facilities to customers by a seller, whereas § 2(d) applies to payments or allowances to a customer by a seller for such facilities or services. Section 2(d) provides:
   > It shall be unlawful for any person engaged in commerce to pay or contract for the payment of anything of value to or for the benefit of a customer of such person in the course of such commerce as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

would "obviously promote and facilitate" the resale of the product. *Id.* at 587. Purdy urges us to adopt the holding of *Centex-Winston* and to extend it to a supplier's refusal to make any sale or delivery at all.

*Centex-Winston* has been criticized as an expansion of the scope of § 2(e) beyond that necessary to effectuate the section's purpose of prohibiting indirect price discrimination. Other courts have limited the definition of "services or facilities" in § 2(e) to services or materials directly related to advertising, promotions or merchandising. *Cecil Corley*, 380 F.Supp. at 851; *see Skinner v. U.S. Steel Corp.*, 233 F.2d 762, 765–66 (5th Cir. 1956); *Diehl & Sons, Inc. v. Int'l Harvester Co.*, 426 F.Supp. 110, 123 (E.D.N.Y.1976).

However, we need not decide whether to adopt or reject the holding of *Centex-Winston*. Even assuming that delivery is a "service" as that term is used in § 2(e), the actions of Champion do not violate that section. Purdy does not assert that Champion delivered in a discriminatory manner a product it had agreed to sell, as was the situation in *Centex-Winston* ; rather Purdy complains that Champion refused to sell certain product lines to it and eventually terminated its dealership. It has long been recognized that the statute does not require a seller to sell to, or maintain a customer relationship with, any buyer or prospective buyer. *See Mullis v. Arco Petroleum Corp.*, 502 F.2d 290, 294 (7th Cir. 1974); *Timken Roller Bearing Co. v. FTC*, 299 F.2d 839, 842 (6th Cir.), *cert. denied*, 371 U.S. 861, 83 S.Ct. 118, 9 L.Ed.2d 99 (1962); *Naifeh v. Ronson Art Metal Works, Inc.*, 218 F.2d 202, 206 (10th Cir. 1954); *Shaw's, Inc. v. Wilson-Jones Co.*, 105 F.2d 331, 333–34 (3d Cir. 1939). Thus, the termination of the franchise agreement did not violate the Act. Moreover, refusal to sell a line of products to a prospective customer while maintaining sales of the product to other customers is similarly not the type of discrimination prohibited by the Robinson-Patman Act. *See David R. McGeorge Car Co., Inc. v. Leyland Motor Sales, Inc.*, 504 F.2d 52, 54–55 (4th Cir.), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1430, 43 L.Ed.2d 674 (1974); *New Amsterdam Cheese Corp. v. Kraftco Corp.*, 363 F.Supp. 135, 142 (S.D.N.Y.1973). Therefore, neither Champion's refusal to sell the Titan and Concord lines to Purdy, nor its termination of the franchise agreement, violated § 2(e).

*Conclusion*

The judgment of the district court is affirmed.